**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**AT COVINGTON**
**CRIMINAL ACTION NUMBER 13-54-DLB**
**CIVIL ACTION NUMBER 15-7411-DLB**

**UNITED STATES OF AMERICA**                                                 **PLAINTIFF**

**v.**

**TIMOTHY TINGLE-BROWN**                                            **DEFENDANT**

**REPORT AND RECOMMENDATION**

On August 24, 2015, the Clerk of Court filed defendant Timothy Tingle-Brown's *pro se*

motion pursuant to 28 U.S.C. §2255 to vacate or set aside his federal conviction and sentence.

Doc. 92.  The United States filed its response on October 23, 2015 (doc. 96) and defendant failed

to file a reply by the November 23, 2015 deadline.  The matter is thus ripe for adjudication.

After considering the record and applicable law, the Court recommends that the motion be

denied.

## I.  FACTUAL AND PROCEDURAL HISTORY

In September 2013, defendant was indicted for distributing heroin, the usage of which

resulted in a death.  Doc. 1.  Dennis C. Alerding was appointed as defendant's CJA attorney.

Doc. 15.  Pursuant to defense counsel's motion, in January 2014 the Court and the Sixth Circuit

authorized defendant to incur $12,000 in expert witness fees, including pathological and

toxological services.  Doc. 24.  In February 2014 the Court denied defendant's oral request for

new counsel (doc. 41) but in March 2014 the Court granted defendant's pro se motion to dismiss

Alerding as defense counsel.  Doc. 51.  Timothy Schneider was then appointed as defendant's

counsel.  *Id.*, Doc. 52.

Pursuant to the parties' joint request, the Court permitted experts for the United States and defendant to be deposed and those depositions were to be admitted at trial.  Doc. 60.  On Friday June 20, 2014 a trial commenced and a jury was empaneled and sworn.  Doc. 64.  On Monday June 23, 2014, however, instead of the trial resuming defendant entered into a plea agreement with the United States.

Under the terms of the plea agreement, which defendant signed, defendant admitted that the United States could prove beyond a reasonable doubt that he sold heroin to the victim who died as a result of using that heroin.[1]  Doc. 66.  The plea agreement further provided that "[t]he statutory punishment for this offense is imprisonment for not less than 20 years and not more than life, a fine of not more than $1,000,000, and a term of supervised release of at least 3 years" but the United States would recommend defendant be given the minimum twenty-year sentence. *Id.* at p. 2.  Defendant explicitly in the plea agreement waived his right to appeal (other than a right to appeal any sentence imposed greater than the twenty-year recommendation) and waived his right to attack collaterally his guilty plea, conviction and sentence (other than allegations of ineffective assistance of counsel).  *Id.*

Judge Bunning engaged in a detailed rearraignment colloquy with defendant before accepting his guilty plea.  After being placed under oath,[2] defendant responded affirmatively

---

[1] Specifically, the plea agreement states:
> The United States could prove the following facts that establish the essential elements of the offense beyond a reasonable doubt, and the Defendant admits these facts are true:
> (a) On April20, 2013, the Defendant knowingly and intentionally sold a mixture or substance containing a quantity of heroin, a Schedule I controlled substance, to John Baum in Taylor Mill, Kenton County, Kentucky.
> (b) John Baum voluntarily consumed the controlled substance and it caused his death that night. Use of the mixture or substance containing heroin was an independent cause of death. Medical evidence shows that John Baum would not have died at that time if not for the use of the substance distributed by the Defendant.

Doc. 66, p. 1-2.

[2] Defendant was not placed under oath at the beginning of the rearraignment.  *See* Doc. 72, p. 8 (the point in the transcript at which defendant was sworn).  This report and recommendation will not rely upon statements made prior to defendant being placed under oath.

when asked by the Court if defendant's attorney had "done everything you've asked him to do[.]" Doc. 72, p. 9.[3]  Defendant stated that he understood the plea agreement's clause stating that defendant sold heroin to the victim who died as a result of using that heroin.  *Id.* at p. 11-12. Defendant further answered affirmatively when asked if he understood the minimum punishment for the offense for which he was pleading guilty was twenty years' imprisonment and the maximum punishment was life imprisonment.  *Id.* at p. 12.

Judge Bunning then engaged in a meticulous discussion with defendant about the sentencing guidelines, including the expected guideline range for defendant via a guilty plea versus a guilty verdict at trial.  *Id.* at p. 13-20.  The Court later explained and discussed the plea agreement's waiver clause in detail as follows:

> [THE COURT]: Now, Mr. Bracke [assistant United States Attorney] mentioned paragraph 6 of your plea agreement also contains a collateral attack waiver. Let me read paragraph 6 because it's very short. I've already read the handwritten addition. It states the defendant waives the right to appeal the guilty plea, conviction and sentence unless the Court sentences you above 240 [month's imprisonment]. And then it further states, except for claims of ineffective assistance of counsel, the defendant also waives the right to attack collaterally the guilty plea, conviction and sentence. Now, have you spoken with Mr. Schneider [defense counsel] about those waivers?
> THE DEFENDANT: The first one. Not the second one, Your Honor.

---

[3] The following relevant colloquy occurred:
> THE COURT: But as far as the options, and we talked about this before you were sworn, I just want to make sure you understand that this is entirely a decision made by you. Your attorney can advise you of the pros and cons of proceeding forward. But ultimately, it's up to you to make this determination because it impacts you and many others. Do you understand all of that?
> THE DEFENDANT: Yes, sir.
> THE COURT: Okay. Are you satisfied with Mr. Schneider's representation during this case?
> THE DEFENDANT: Not disappointed, Your Honor.
> THE COURT: You're not disappointed?
> THE DEFENDANT: No, sir.
> THE COURT: Has he done everything you've asked him to do?
> THE DEFENDANT: Yes, sir.
> THE COURT: He has, okay. I'm sure you've had some discussions with him that were -- and I'm not going to ask you to go into all the details of those, but there is a back and forth between you and your lawyer. You understand that?
> THE DEFENDANT: Yes, sir.

Doc. 72, p. 8-9.

THE COURT: Let me explain what the second one is, because you've been an active participant in this case from the beginning. Through your correspondence with the Court, which was ultimately construed as a motion to relieve your prior lawyer, you were appointed a second attorney in this case. You have been an active part in litigation. I don't want to say you've been litigious, because that has kind of a negative connotation, but you have been an active litigant in this case. That's a fair characterization, I think. . . .  So this waiver of your right to file a post-conviction motion, it does have teeth. The Circuit over at the Court of Appeals has said you can waive -- in fact, you waive your right to confront your witnesses in this case, and we had a hearing last week on taking the depositions of your experts and the one expert, Dr. Ward, by the prosecutor. I went through a number of questions with you to make sure you understand that you have a right to actually confront the witnesses, and you waived that. What you're not going to be able to do -- let's say you're at the facility here in Kentucky, one of the federal facilities in Kentucky serving your sentence, and you decide to file a motion complaining about, you know what, they shouldn't have forced me to waive my confrontation rights. The record will reflect that I don't think we forced you to do anything. In fact, hopefully the record reflects that all of this has been something that you've decided to do on your own, because that's really what this is about. You've got to make your own choices. We tell you what the options are, and you decide. Hopefully, you've done that here.

But the waiver, "except for claims of ineffective assistance of counsel." Now, everything that your prior lawyer did, we remedied that by continuing the trial, giving you a second lawyer, and you had two experts. There was an investigator, Mr. Dixon, I think, who I expect ultimately to get a bill from as well. So all of those things have been put in place for you. You're not going to be able to come back later and challenge anything about your case with the sole exception that you think maybe Mr. Schneider didn't do a very good job from a constitutional perspective. That's the only claim that you're able to raise in what's called a 2255 motion. Do you understand that?
THE DEFENDANT: Yes, sir.
THE COURT: Okay. Just because this preserves the right to file such a claim, that doesn't mean that that claim's going to have any merit, because we've gone into a lot of detail about this plea process today. Hopefully you've been -- *I asked you earlier if you were satisfied with your lawyer. You said you were. You also said he's done everything you've asked him to do. Is that accurate?*
*THE DEFENDANT: Yes, sir.*
THE COURT: All right. So you understand that waiver now, after going through it with you, paragraph 6?
THE DEFENDANT: Yes, sir. . . .
THE COURT: And where this oftentimes comes up, Mr. Brown, and I know you've written a lot of letters to the Court so I know you, as I've said earlier, you're very active in this litigation. But there's a lot of individuals in the federal penitentiaries, federal prisons who would prefer not to be there, who want to file motions with the various courts in which they were convicted for various reasons.

4

> There's a lot of jailhouse lawyers in various facilities who say oh, you should file this motion. You should do that, you should do this. You're not going to be able to file anything on your case with this sole exception. You understand that --
> THE DEFENDANT: Yes, sir.
> THE COURT: -- about the ineffective assistance?
> Okay. Fair enough. I think we've covered that. I do find that after going through the waiver in paragraph 6 with Mr. Tingle-Brown that the waiver of the right to appeal and the waiver of the right to file a collateral attack, with that sole exception, are knowing and voluntary waivers and that he understands the consequences of both waivers.

*Id.* at p. 30-35 (emphasis added and some paragraph breaks omitted).

The Court then discussed with defendant the plea agreement's recitation of evidence of guilt the United States could prove at trial. Specifically, the following colloquy occurred:

> THE COURT: Okay. Now, [paragraph] 3A [of the plea agreement] states on April 20, 2013, the defendant knowingly and intentionally sold a mixture or substance containing a quantity of heroin, a Schedule I controlled substance, to John Baum in Taylor Mill, Kenton County, Kentucky. Did you do that?
> THE DEFENDANT: Yes, sir.
> THE COURT: John Baum voluntarily consumed the controlled substance, and it caused his death that night. The use of the mixture or substance containing heroin was an independent cause of death. Medical evidence shows that John Baum would not have died at the time if not for the use of the substance distributed by the defendant.
> Do you admit that the United States would be able to prove those facts in paragraph 3B beyond a reasonable doubt if this case went to trial? . . .
> THE DEFENDANT: Yes, sir.
> THE COURT: You did? You admit that?
> THE DEFENDANT: Yes, sir.

*Id.* at p. 37-38. When asked if he had any questions for the Court, defendant answered "[n]o, sir." *Id.* at p. 41.

About a month later defendant filed a pro se motion to withdraw his guilty plea. Doc. 70. Defendant asserted that his counsel had coerced him to plead guilty by telling defendant that the mother of his young child could be called as a witness and that her testimony would open her up to criminal prosecution (which could have resulted in the child being placed into protective

custody).  The Court appointed attorney Dean Pisacano to represent defendant in regards to the

motion to withdraw.  Docs. 74, 75.

When the Court conducted a hearing on the motion to withdraw, defendant changed

course, stating that he wished to withdraw his motion to withdraw his guilty plea and,

furthermore, wanted Schneider to represent him at sentencing.[4]  About a week later, on

September 4, 2014, defendant was sentenced to the twenty-year term of imprisonment called for

in the plea agreement.  Doc. 80.  Defendant did not raise any complaints about his counsel during

---

[4] The relevant colloquy was as follows:

> THE COURT: This matter was set for a follow-up status conference. We met a couple weeks ago and had you in court, Mr. Brown, and I appointed Mr. Pisacano to meet with you and advise you of your rights, et cetera.
> Mr. Pisacano, have you had a chance to sit down and talk to Mr. Tingle-Brown about his options here? I know we have the pending motion which is ripe, and I'm prepared, if necessary, to adjudicate that.
> MR. PISACANO: Judge, I have spoken at great length with this gentleman, and he would like to withdraw, I guess it was an oral motion --
> THE COURT: It was a written letter, which I construed --
> MR. PISACANO: A written letter to withdraw his guilty plea. I went over there. Mr. Schneider and I have spent a great deal of time with him. He understands the ramifications.
> I think it was more of a communication issue than anything else, but he's ready to go --
> THE COURT: Mr. Schneider is just entering the courtroom. Go ahead. Mr. Pisacano was telling me what --
> MR. PISACANO: The long and short of it, I think it was just some communication problems. At this point, I think this gentleman would like to withdraw that motion to set aside his guilty plea and to go forward through with the sentencing.
> THE COURT: All right. Mr. Tingle-Brown, I just want to verify that that's your intention. If that's what you want to do, that's certainly fine, but I want to make sure that you have had time to meet with Mr. Pisacano. Have you?
> THE DEFENDANT: Yes, sir.
> THE COURT: Is that what you're wanting to do here now?
> THE DEFENDANT: Yes, sir. . . .
> THE COURT: I'm wondering if, now that this issue has been withdrawn, and I haven't dealt with this before, I would assume that Mr. Schneider would then step back in and represent him?
> MR. PISACANO: We had that discussion as well. We discussed the fact that it was an agreement to a specified amount of years. I said, however, if there's something else that I need to know, I would have to go through his 42-pound file.
> Mr. Schneider is up to snuff as far as this young man's history and everything else, and I thought he would probably be more qualified to do the sentencing from what he already knows. We went through that with Mr. Tingle, and he would like Mr. Schneider to represent him at the sentencing.
> THE COURT: The last thing he said, Mr. Schneider representing you at sentencing, is that what you'd like, sir?
> THE DEFENDANT: Yes, sir.

Doc. 89, p. 2-3, 6.

the sentencing hearing. Defendant filed a notice of appeal but in April 2015 that appeal was dismissed as having been untimely filed.  Doc. 91.

Defendant filed the pending §2255 motion in August 2015, raising a host of ineffective assistance of counsel claims against all three of his attorneys (Alerding, Schneider and Pisacano). Doc. 92.  Defendant has jumbled facts and legal arguments in the "supporting facts" section of his motion so determining exactly which allegations of ineffective assistance of counsel he intended to raise is difficult.  However, as the Court construes it, defendant asserts counsel was ineffective for:[5] 1) "refus[ing] to adequately explain to the defendant all aspects of the proceedings"; 2) "refus[ing] to provide various documents to defendant during discovery; 3) "order[ing] defendant to 'shut up' in response to defendant explaining expressing [sic] knowledge of premeditated disposal of illicit drug paraphernalia, sanitation of what eventually would become a police crime scene . . ."; 4) "order[ing] defendant to again 'shut up' and be silent upon defendant explaining expressing [sic] knowledge of police informant(s) . . . sexual relationship . . ."; 5) erroneously advising defendant as to the likely sentence which would be imposed if defendant went to trial; 6) "fail[ing] to conduct a reasonably adequate investigation before advising defendant to forego trial post jury selection and submit to a plea agreement of guilty . . ."; 7) conspiring and manipulating defendant for racial reasons to plead guilty despite the likelihood of acquittal under *Burrage v. United States*, ___ U.S. ___, 134 S.Ct. 881 (2014)[6];

---

[5] The Court has standardized some idiosyncratic capitalization contained in defendant's handwritten §2255 motion.
[6] In *Burrage*, the Supreme Court held that "a defendant cannot be liable under the penalty enhancement provision of 21 U.S.C. § 841(b)(1)(C) unless such use [of drugs] is a but-for cause of the death or injury."  134 S.Ct. at 892. Defendant seems to raise the mere existence of *Burrage* as an argument for relief, without explaining how the opinion in and of itself merits habeas relief.  *See* Doc. 92, p. 10.  Moreover, the existence of *Burrage* was well known by defendant and all other parties as it was discussed during rearraignment.  To wit:

> THE COURT: All right. The *Burrage* case. I know that was decision came down in January of this year which changed the standard of proof that was necessary to a but-for analysis. You've read *Burrage*; have you not?
> THE DEFENDANT: Yes, sir.
> THE COURT: Have you discussed *Burrage* with your lawyer?
> THE DEFENDANT: Here and there. Not in depth as my knowledge entails of it.

8) "[o]n June 22, 2014, counsel(s) were derelict to negotiate a guilty plea with potentially fruitfull [sic] leads evident without having in line to testify an authority to counter autopsy results"; and 9) using scare tactics regarding possible prosecution of the mother of defendant's child in order to get defendant to plead guilty. *Id.* at p. 4, 6-10.

## II. Analysis

### A. Standard of Review

"A prisoner seeking relief under § 2255 must allege as a basis for relief: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006). To be cognizable under §2255, an alleged constitutional error must be of such magnitude as to have "had a substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999). "Conclusory statements are insufficient to warrant relief under Section 2255." *Combs v. United States*, 2009 WL 943526, at *3 (M.D. Tenn. April 6, 2009). *See also Wogenstahl v. Mitchell*, 668 F.3d 307, 343 (6th Cir. 2012) ("Merely conclusory allegations of ineffective assistance, however . . . are insufficient to state a constitutional claim."). In addition, "[s]olemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

---

THE COURT: You understand the jury instruction I read and the elements of those offenses, that's consistent with your review of *Burrage*; is it not?
THE DEFENDANT: Yes, sir.
Doc. 72, p. 23.

8

In order to demonstrate ineffective assistance of counsel, a petitioner must make two showings. "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S.668, 687 (1984). A court need not address both prongs if a petitioner fails to make a sufficient showing on either prong. *See, e.g., United States v. DeGroat*, 102 Fed.Appx. 956, 959 (6th Cir. 2004). When a defendant has pleaded guilty, the Supreme Court has held that "to satisfy the 'prejudice' requirement [of *Strickland*], the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). "To demonstrate a reasonable probability that he would have gone to trial, a defendant is required to present evidence apart from a lone assertion that but for counsel's error he would have pleaded not guilty and gone to trial." *Parks v. United States*, 2013 WL 427256, at *4 (E.D.Tenn. Feb. 4, 2013) (citing cases). A reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." *Strickland*, 466 U.S. at 689. Of course, an attorney cannot be deemed ineffective for failing to raise a meritless argument. *See, e.g., Bailey v. Smith*, 492 Fed. Appx. 619, 627 (6th Cir. 2012) ("*Strickland* does not require counsel to make meritless requests.").

Defendant's guilty plea contains a waiver of the right to seek postconviction relief on all grounds except ineffective assistance of counsel. To the extent defendant may be construed to have raised an argument based on anything other than ineffective assistance of counsel, such an argument should be deemed barred by the plea agreement's waiver clause. *See, e.g., United*

*States v. Thompson*, 2009 WL 1917073, at \*1 (W.D.Ky. July 1, 2009) ("A valid plea agreement

which contains a waiver of the right to seek collateral relief will bar such action, including a §

2255 motion attacking a conviction, sentence, or plea. *See Davila v. United States*, 258 F.3d 448,

450‒51 (6th Cir.2001) . . . .").

### B. Failure to Explain Adequately the Proceedings

In its entirety, defendant's first argument is: "[c]ounsel(s) failed in their refusal to

adequately explain to the defendant all aspects of the proceedings thus diminishing defendant['s]

comprehension of due process.  Multiple counsel(s) erred."  Doc. 92, p. 6.  Defendant's

argument is fatally conclusory in that it does not state with particularity which counsel failed to

explain which specific proceedings, what defendant specifically failed to comprehend and how

that alleged failure caused defendant to plead guilty.  In addition, as previously explained, the

charges, plea agreement and applicable law (including *Burrage*) were each discussed in detail

during rearraignment (after which defendant declined to ask any questions when given the

opportunity).  Defendant also stated under oath at rearraignment that counsel had done

everything defendant had asked.  In short, defendant is not entitled to relief on this claim.

### C. Refusal to Provide Discovery

The entirety of defendant's second argument is: "[c]ounsel(s) failed, refused to provide

the defendant all necessary documents of the discovery, namely: police reports, law enforcement

reports[,] D.E.A., state, local, grand jury minutes, names of witnesses, indictments, all cell phone

records, prosecution memorandum, crime scene lists, etc."  Doc. 92, p. 7.  This allegation is,

again, fatally conclusory.  For example, defendant does not state which prosecution memoranda

or crime scene lists he should have received.  In addition, some of the materials at issue are

matters of public record (such as the indictment) and others (such as grand jury testimony) were

not subject to discovery until certain testimony occurred. *See* Fed. R. Crim. P. 26.2. Defendant also stated under oath to the Court that counsel had done everything defendant had asked and defendant did not during rearraignment or sentencing bring any discovery-related issues to the Court's attention. Finally, defendant does not explain how his decision to plead guilty was affected by the alleged failure to receive discovery materials.[7] In short, defendant has not shown that he is entitled to habeas relief on this argument.

### D. Ordering Defendant to "Shut Up"

Defendant next raises two arguments involving counsel allegedly telling him to "shut up." The entirety of those arguments are:

> 3. Counsel ordered defendant to "shut-up" [sic] in response to defendant explaining expressing [sic] knowledge of premeditated disposal of illicit drug paraphernalia, sanitation of what evidentally [sic] would soon become a police crime scene at the residence of, and performed by Brittany Haney, James Hatfield (et. [sic] al[.]) in complicity under the authoritative direction of Brittany Haney's biological father via telephone, within the time prior to the arrival of police called [to] investigate a death of: John Baum.
> 4. Counsel ordered defendant to again "shut-up [sic] and be silent" upon defendant explaining expressing [sic] knowledge of police informant(s) James Hatfield and Brittany Haney['s] sexual relationship throughout the criminal investigation. And agreement with the Department of Justice, that James Hatfield foregoes jail time in exchange for his testimony, information. [sic]

Doc. 92, p. 7-8.

As with the previous arguments, defendants' contentions regarding being told to shut up run directly contrary to his statements at rearraignment that he was not disappointed in his attorney's performance and that counsel had done everything defendant had asked. Moreover, defendant admitted his guilt at rearraignment and has not explained how the allegations regarding being told to shut up (or the alleged disposal of drug paraphernalia or a sexual

---

[7] In their statements to the Court both Schneider and Alerding contend they went over all discovery with defendant. However, those statements, though notarized, do not indicate that they were made under penalty of perjury. *See* 28 U.S.C. §1746.

relationship between others) either negates defendant's guilt or affected his decision to plead

guilty. In other words, defendant has not shown prejudice nor has he otherwise shown an injury

or deficiency of sufficient constitutional magnitude to warrant habeas relief.

### E. Advice as to Possible Sentences

Defendant's next argument, which is far from a model of clarity, is:

On June 22, 2014[,] Sunday, counsel erroneously advised the defendant the
sentence likely to be served if defendant chooses to go to trial in the morning,
moreover the erroneous advice was without counsel producing physically or
remote[ly] extrapolating the law, statute or guidelines, case law, that counsel
knew to be relevant facts and applicable legal principle(s) that effective assistance
of counsel under, and guaranteed by, the Sixth Amendment.

Doc. 92, p. 8. As the Court construes it, defendant asserts that on the day before trial was set to

resume (and after the jury had already been picked) counsel gave defendant erroneous advice

regarding possible sentences which could be imposed if defendant were to be found guilty by a

jury.

As with his previous arguments, defendant fails to show how any erroneous advice or

actions by counsel affected defendant's decision to plead guilty. Moreover, the argument is

conclusory in that it does not detail what allegedly erroneous advice was provided by counsel.

However, even if the Court were to assume leniently—*solely for the purposes of argument*—that

counsel provided defendant erroneous advice about sentencing, defendant would not be entitled

to relief because the possible sentences were extensively discussed by the Court at

rearraignment.

Specifically, the following discussion occurred:

MR. SCHNEIDER: We discussed the fact that the career offender application
would be, in my opinion -- really, the way this conversation came about, it was in
trying to determine what was in his best interest. He asked me what would happen
if he would lose at trial on the death issue, and I explained to him that in my
opinion, the career offender application would kick in. It would be without

acceptance, likely, because at that time, there was no plea of guilty. We'd gone to trial. Told him that might be up in the air.

But based upon that, we talked about a likely sentence on a career offender application.

THE COURT: Now, Mr. Bracke, if he was not -- let's hypothetically say he goes to trial, he's convicted of distribution but not causing the death. The maximum statutory penalty would be 30 years --

MR. BRACKE: Twenty.

THE COURT: His priors are not drug --

MR. BRACKE: The priors are not for drugs.

THE COURT: They're violent crimes?

MR. BRACKE: They are, Judge.

THE COURT: So it would be 20 -- that would be a 30 under 4B1.1. That would be --

MR. BRACKE: It would be a 30 with acceptance. It would start at 32.

THE COURT: It would be a 32 with no acceptance.

MR. BRACKE: Right.

THE COURT: Do you think he would be a Category VI without the career offender?

MR. BRACKE: We believe he would be a category – he will be a career offender. Even though the guidelines as a career offender are less than the guidelines for causing death, the career offender guideline still puts him in Category VI in all cases.

THE COURT: I understand. What would be his criminal history be without?

PROBATION OFFICER STUDER: I have an estimation of criminal history IV.

THE COURT: If you are a career offender, and we'll talk about that since you haven't spoken at length with Mr. Schneider, and that's not really surprising because up until now we've been proceeding on a trial track, and what he's identified is more of a sentencing issue.

Because you've chosen this plea option, the potential sentencing is important. In fact, Rule 11 of the Federal Rules of Criminal Procedure require that I go over what the potential penalties are from a statutory perspective and a guideline perspective.

So if you are a Category VI criminal history, which would mean you were a career offender, and a level 32, the advisory guidelines would be 210 to 240, because 240 would be the cap if you weren't convicted of that death enhancement. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Now, if you did have the death enhancement, the jury were to find that Mr. Baum died – but for his ingestion of the heroin that you distributed to him on April 20, 2013, he would not have died, and they would check that yes, the jury -- or you pled guilty to that, which you're doing here. But let's say you go to trial and you don't get acceptance of responsibility and you're enhanced for the death enhancement. It looks like under 2D1.1(a)(2), base offense level 38 if the defendant is convicted under 841(b)(1)(A) or (b)(1)(B) or (b)(1)(C) and the offense of conviction establishes that death resulted from the use of the substance.

13

That would kick in if you went to trial. You'd be an offense level 38, and he would still be a career offender. So he would be Category VI. A 38, Category VI is 360 to life; is that right? Yes, 30 years. Do you understand that?

THE DEFENDANT: I understand.

THE COURT: Okay. Now, if you plead guilty, you're looking at a guideline range of 324 to 405.

THE DEFENDANT: Right now?

THE COURT: That's the guideline range you're looking at, potentially. Now, there's a recommendation of 20 years by the prosecutor. If I go with the prosecutor's recommendation in this case and sentence you to 20 years, you're giving up your appellate rights. We've already talked about that.

THE DEFENDANT: Yes, sir.

THE COURT: Now, I'm trying to tell you what the potential guidelines are on a plea. If you plead to the death enhancement, that total offense level of 38 is reduced by two because you're pleading guilty. That gets us down to a 36 under the guidelines. Do you understand how that works?

THE DEFENDANT: Yes, sir.

THE COURT: Now, if you're a 36, Category VI, which you will be because -- well, if you're deemed to be a career offender, you will be. Mr. Bracke seems fairly confident, as does the probation officer, that you will. I haven't looked into that in any great detail. If you're a career offender and you plead guilty, your advisory guideline range would likely be 324 to 405 months. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Okay. Now, the recommendation is 240, which is approximately eight years less than that.

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand that?

THE DEFENDANT: Yes, sir.

Doc. 72, p. 13-17.  Defendant was apprised by the court of his possible sentences and stated

under oath that he understood those possibilities.  Therefore, any prior, purportedly erroneous,

advice by counsel was cured by the Court during rearraignment.

**F.  Failing to Investigate Adequately**

The entirety of defendant's next argument is that "[o]n June 22, 2014 counsel failed to

conduct a reasonably adequate investigation before advising defendant to forego trial post jury

selection and submit to a plea agreement of guilty by defendant signature the next day [sic]."

Doc. 92, p. 8.  Defendant's allegations are once again fatally conclusory in that he does not

specify what additional investigation(s) counsel should have performed and how any additional

investigation(s) by counsel would have caused defendant to not plead guilty.  Moreover,

defendant stated under oath that counsel had done all that defendant asked him to do.

Defendant relatedly argues later in his motion that "[o]n June 22, 2014 counsel(s) were

derelict to negotiate a guilty plea with potentially fruitfull [sic] leads evident without having in

line to testify an authority to counter autopsy results." *Id.* at p. 9.  Again, that allegation is fatally

conclusory in that defendant does not specify what "fruitful leads" counsel failed to explore and

how those "fruitful leads" would have affected defendant's decision to plead guilty.  Moreover,

as previously noted, the Court had approved funding for defense counsel to retain experts and

defendant stated under oath that counsel had done all defendant asked him to do.

### G. *Burrage*

Defendant next argues:

> On June 22, 2014 counsel(s) knowing the relevance of the recent United States
> Supreme Court decision in . . . *Burrage* . . . hastily, knowingly conspired in
> culpable fashion with bias racist overtones manipulated, browbeat the defendant
> an African American into submitting to an agreement of a guilty plea, clearly to
> avert a scheduled trial post jury selection that would end in an acquittal or lesser
> sentence, due to . . . *Burrage* . . . .

Doc. 92, p. 9.

As cited previously, the Court explicitly discussed *Burrage* and its "but for" causation

requirement at rearraignment.  In addition, defendant later at rearraignment specifically agreed

under oath that he was guilty under the "but for" causation standard of *Burrage*, though *Burrage*

itself was not explicitly mentioned during that colloquy.  *See* Doc. 72, p. 37-38.[8]  Defendant has

---

[8] Specifically,

> THE COURT: Okay. Now, [paragraph] 3A [of the plea agreement] states on April 20, 2013, the
> defendant knowingly and intentionally sold a mixture or substance containing a quantity of heroin,
> a Schedule I controlled substance, to John Baum in Taylor Mill, Kenton County, Kentucky. Did
> you do that?
> THE DEFENDANT: Yes, sir.

utterly failed to show how *Burrage* would have resulted in an acquittal or how he should now be

allowed to repudiate statements he made under oath.  Moreover, defendant's newfound

allegations of racism or browbeating are based only on opinion or conjecture without *any*

concrete supporting facts (i.e., the nature of any alleged racist or browbeating-type comments,

the location of such comments, whether the comments were made in the presence of others, etc.).

Defendant's allegations also stand in stark contrast to his statements under oath at rearraignment

that he was not dissatisfied with his attorney's performance and defendant points to no time prior

to the filing of this §2255 motion where he brought any allegations of racism or browbeating to

the Court's attention despite having had numerous opportunities to do so.[9]  Finally, any

browbeating is mitigated by the fact that at rearraignment the Court took pains to make sure

defendant knew that he did not have to plead guilty.  *See* Doc. 72, p. 35-36 (statement by the

Court to defendant that "[y]ou understand that Mr. Schneider's going to be present if you decide

to go to trial instead of -- you can decide right now, you know what? I want to change my mind.

I want a trial, and we'll start the trial. We'll bring the jury in.").

## H.  Threat of Prosecution

Defendant's final substantive argument is:

> On June 22, 2014 counsel at 1900 hours, a mere 14 hours before opening
> argument(s), met again with the defendant to apply scare tactics, whereby counsel
> again browbeat the defendant into believing that defendant mother of his child

---

THE COURT: John Baum voluntarily consumed the controlled substance, and it caused his death
that night. The use of the mixture or substance containing heroin was an independent cause of
death. Medical evidence shows that John Baum would not have died at the time if not for the use
of the substance distributed by the defendant.
Do you admit that the United States would be able to prove those facts in paragraph 3B beyond a
reasonable doubt if this case went to trial? . . .
THE DEFENDANT: Yes, sir.
THE COURT: You did? You admit that?
THE DEFENDANT: Yes, sir.
Doc. 72, p. 37-38.
[9] Indeed, defendant withdrew his motion to relieve Schneider as his counsel and instead stated that he (defendant)
wished to be represented by Schneider at sentencing.  Such a course of action is completely incompatible with the
current allegations of racism and browbeating.

[sic] would be forced to testify and according to counsel, the mother would be placed in jail and the child into the custody of state child services.  This complaint filed in court July 21, [20]14.

Doc. 92, p. 10.

Defendant did mention in his motion to withdraw his guilty plea that his counsel had told him that the mother of defendant's child could subject herself to prosecution if she testified in defendant's criminal case.  Doc. 70, p. 1.  However, defendant voluntarily chose to withdraw the motion to withdraw guilty plea.  Moreover, at rearraignment defendant made no mention of any alleged browbeating by counsel or how any acts of counsel had caused defendant to plead guilty involuntarily.  Finally, even if the Court assumes (solely for purposes of argument) that defense counsel told defendant that his child's mother would be subject to prosecution if she testified at trial, it is not inherently improper for a prosecutor to threaten third persons with prosecution during plea negotiations, provided that there is good cause for the third person's prosecution.  *See, e.g., Bradford v. Mitchem*, 2014 WL 838790, at \*15 (N.D. Ala. March 4, 2014) (holding in §2254 case that "[a prosecutor is not barred from threatening third persons with prosecution during the course of plea negotiations, as long as the prosecutor has probable cause that the third persons committed the crime that the prosecutor threatens to charge. Further, prosecutors may offer to halt criminal investigations of third persons that are initiated in good faith as consideration in plea negotiations.") (citation omitted).  Defendant has utterly failed to show that any threatened prosecution was without good cause.  In short, defendant has not demonstrated an entitlement to habeas relief.

## III. Recommendation

For the foregoing reasons, defendant's 28 U.S.C. §2255 motion (doc. 92) should be **denied**.

Particularized objections to this Report and Recommendation must be filed with the

Clerk of Court within fourteen (14) days of the date of service or further appeal is waived.

*United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005); *Thomas v. Arn*, 728 F.2d 813 (6th

Cir. 1984), aff'd, 474 U.S. 140, 155 (1985). A general objection that does not "specify the issues

of contention" is not sufficient to satisfy the requirement of a written and specific objection.

*Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995)(citing *Howard v. Secretary of HHS*, 932 F.2d

505, 508-09 (6th Cir. 1991)).   Poorly drafted objections, general objections, or objections that

require a judge's interpretation should be afforded no effect and are insufficient to preserve the

right of appeal.  *Howard*, 932 F.2d at 509.  A party may respond to another party's objections

within fourteen days of being served with a copy of those objections.  Fed. R. Civ. P. 72(b)(2).

This the 1st day of December, 2015.

**Signed By:**

**J. Gregory Wehrman**

**United States Magistrate Judge**

18