**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

**CRIMINAL ACTION NO. 13-54-DLB-JGW**

**UNITED STATES OF AMERICA**                                               **PLAINTIFF**

**vs.**            **ORDER ADOPTING REPORT AND RECOMMENDATION**

**TIMOTHY TINGLE BROWN**                                         **DEFENDANT**

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

## I.      Introduction

This matter is before the Court on Defendant Timothy Tingle Brown's Motion to Vacate Under 28 U.S.C. § 2255 (Doc. # 92).  Consistent with local practice, this matter was referred to United States Magistrate Judge J. Gregory Wehrman for the purpose of reviewing the Motion and preparing a Report and Recommendation ("R&R").   On December 1, 2015, Judge Wehrman issued an R&R (Doc. # 97), wherein he recommends that Defendant's Motion be denied.  Defendant having filed Objections (Doc. # 100) to the R&R, and the United States having submitted a Response (Doc. # 101), this matter is now ripe for review.  For the reasons stated herein, Defendant's Objections are **overruled**, and Judge Wehrman's R&R is **adopted** as the findings of fact and conclusions of law of the Court.

## II.     Standard of Review

Pursuant to 28 U.S.C. § 636(b)(1)(B), a district court judge may refer dispositive matters to a magistrate judge for the preparation of a report and recommendation.  "[T]he

magistrate judge must promptly conduct the required proceedings" and "enter on the record a recommendation for disposing of the matter, including any proposed findings of fact." 28 U.S.C. § 636(b)(1)(B). If a party files objections to the recommendation, a district court must then consider those objections *de novo* and "accept, reject, or modify the recommendation, receive further evidence, or resubmit the matter to the magistrate judge with instructions." Fed. R. Crim. P. 59(b)(3). The objections must be specific; "vague, general or conclusory objections . . . [are] tantamount to a complete failure to object." *Cole v. Yukins*, 7 F. App'x 354, 356 (6th Cir. 2001) (internal quotations omitted). Moreover, "an 'objection' that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context." *VanDiver v. Martin*, 304 F. Supp. 2d 934, 938 (E.D. Mich. 2004).

## III.  Defendant's Objections

Defendant argues that Judge Wehrman erred in finding that he was not entitled to habeas relief based on ineffective assistance of counsel. (Doc. # 100). Defendant makes four points to support his assertion of ineffectiveness: (1) his trial counsel coerced him into pleading guilty, claiming that the mother of his child would be subject to prosecution if he did not do so; (2) his trial counsel failed to raise the defense of necessity; (3) his trial counsel withheld relevant case law and allowed him to enter into a plea agreement that was not favorable to him in light of said case law; and (4) his trial counsel did not review the plea agreement with him, nor did he explain the consequences of waiving appeal and admitting that the heroin he distributed led to the victim's death. (*Id.*). As a separate matter, Defendant contends that he is entitled to a reduction in sentence pursuant to U.S.

2

Sentencing Guideline § 5K2.12.

As a preliminary matter, the Court has serious doubts about the sufficiency of Defendant's Objections. The issues raised therein were also raised before Judge Wehrman, who carefully reviewed the record and supported his recommendation with pertinent facts. (Doc. # 97). Against this backdrop, Defendant's Objections seem to do little more than state a disagreement with the suggested resolution. This is insufficient grounds for an objection under 28 U.S.C. § 636(b)(1)(B). However, out of an abundance of caution, the Court will briefly review Tingle-Brown's arguments.

## IV. Analysis

### A. Ineffective Assistance of Counsel

A convicted defendant's motion for § 2255 relief must be based on one of three grounds: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006); *see also United States v. Watson*, 165 F.3d 486, 488 (6th Cir. 1999) (explaining that errors of constitutional magnitude must have "had a substantial and injurious effect or influence on the proceedings"). "Ineffective assistance of counsel claims fall within the first of these three categories." *United States v. Doyle*, 631 F.3d 815, 817 (6th Cir. 2011).

An ineffective assistance of counsel claim has two components. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). First, the defendant must show that his attorney's performance was deficient. *Id.* "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* Second, the defendant must demonstrate that "the deficient performance

3

prejudiced the defense." *Id.* "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is unreliable." *Id.* "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* For this reason, the Sixth Circuit has held that a court need not address both prongs if a defendant fails to make a sufficient showing on either prong. *See United States v. DeGroat*, 102 F. App'x 956, 959 (6th Cir. 2004).

"[T]he two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel." *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). While the first half of the test "is nothing more than a restatement of the standard of attorney competence[,]" the second half "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Id.* at 58-59. "In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.*

### i.    The Coercion Issue

"Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). "The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Id.*

Throughout his Motion, Defendant asserts that his defense counsel, together with the prosecutor, coerced him to plead guilty by threatening to prosecute the mother of his child. (Doc. # 100 at 3-4 and 6-8). He claims that, as a result, he did not enter a plea

4

voluntarily.  (*Id.* at 4).  Rather, he did so because he feared that his child would be left without a guardian if he went to trial.  (*Id.*).

The record reflects that the Court went to great lengths to ensure that Defendant's plea was knowing and voluntary.  (Doc. # 72 at 6, 8-9).  At the beginning of the plea colloquy, as Defendant prepared to sign the plea agreement, the Court confirmed that it was Defendant's intention to enter a plea:

> THE COURT: Have you read that, Mr. Brown?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: You're not being forced to sign anything.  You understand that?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: You're doing this of your own free will because this is what you want to do?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Go ahead and sign that, then.

(*Id.* at 6).  The Court also emphasized that it was Defendant's choice whether to plead guilty or go to trial:

> THE COURT: But as far as the options, and we talked about this before you were sworn, I just want to make sure you understand that this is entirely a decision made by you.  Your attorney can advise you of the pros and cons of proceeding forward.  But ultimately, it's up to you to make this determination because it impacts you and many others.  Do you understand all of that?
>
> THE DEFENDANT: Yes, sir.

(*Id.* at 8-9).  The Court then discussed each provision of the plea agreement with Defendant, ensured that he understood these provisions and explained how a guilty plea

would impact the proceedings.  (*Id.* at 19-20, 24, 35-36).  Defendant ultimately chose to enter a plea of guilty.  (*Id.* at 39).

A few weeks later, Defendant sent a *pro se* Motion to Withdraw Plea to the Court, claiming that defense counsel pressured him to plead so that he could save the mother of his child from possible prosecution.  (Doc. # 70 at 1).  In light of these allegations, the Court convened two status conferences and appointed a third lawyer to advise Defendant of the consequences of withdrawing his plea.  (Docs. # 87, 88 and 89 at 2).  At the second status conference, Defendant indicated that he wished to withdraw his Motion to Withdraw Plea.  (Doc. # 89 at 2).  He also informed the Court that he wanted his second attorney to represent him at sentencing.  (*Id.* at 6).  The Court granted both requests, and later sentenced Defendant to a term of two hundred and forty (240) months in prison, consistent with the terms of the plea agreement.  (Docs. # 66 and 80).

Although Defendant admits that his current assertions are inconsistent with his sworn testimony from both the plea colloquy and the status conference, he maintains that his answers were obtained under psychological duress.  (Doc. # 100 at 4).  For this reason, he "beseech[es] the Court to rely on his alleged subjective impression, and correspondences to the court (critical of his concerns of counsel's dealing with the threats by the government), and not the record."  (*Id.*).

This is the second time that Defendant has presented the Court with conclusory allegations about entering a guilty plea under duress.  These assertions are not only unsupported by specifics, they directly contradict Defendant's numerous sworn statements, as he himself acknowledges.  When a defendant presents conclusory allegations that are unsupported by the record, they are subject to summary dismissal under *Blackledge*.  431

6

U.S. at 74.  Nevertheless, when first presented with this issue, the Court took it seriously. It brought Defendant back before the Court to discuss the matter, and even appointed another lawyer for Defendant to ensure that his rights were protected.  Defendant had his chance to speak up, and he chose to withdraw his Motion.  He cannot now expect the Court to disregard its exhaustive record, simply to entertain a repetitive set of inconsistent, unsworn allegations.  Because Defendant has failed to demonstrate that his attorney was ineffective in this regard, his first objection is overruled.

### ii.    The Defense of Necessity

The defense of necessity, also commonly referred to as the defense of duress, "does not negate a defendant's criminal state of mind when the applicable offense requires a defendant to have acted knowingly or willfully; instead, it allows the defendant to 'avoid liability . . . because coercive conditions or necessity negates a conclusion of guilt even though the necessary *mens rea* was present.'" *Dixon v. United States*, 548 U.S. 1, 7 (2006) (quoting *United States v. Bailey*, 444 U.S. 394, 409-10 (1980)).  This defense may be presented to the jury at trial if there is a *prima facie* showing that the defendant can produce evidence on each of the elements of the defense.  *United States v. Capozzi*, 747 F. Supp. 2d 846, 849-50 (E.D. Ky. 2010) (citing *United States v. Johnson*, 416 F.3d 464, 468 (6th Cir. 2005)).

Defendant argues that "defense counsel knew that the 'defense of necessity' is available when a person is faced with a choice of 'two evils' and must decide whether (in this case) to go to trial; thereby placing his child's other primary caregiver to prosecution and possible forfeiture of freedom."  (Doc. # 100 at 6).

As *Dixon* states, the defense of necessity may be presented *at trial* to avoid liability for a criminal offense.  The Court is unaware of any case law stating that the defense of necessity may be used to cast doubt on the voluntariness of a guilty plea.  Because a defense attorney cannot be ineffective for failing to raise a meritless argument, Defendant's second objection is also overruled.  *See Bailey v. Smith*, 492 F. App'x 619, 627 (6th Cir. 2012).

### iii.    The Impact of *Burrage*

"The Controlled Substances Act imposes a 20-year mandatory minimum on a defendant who unlawfully distributes a Schedule I or II drug, when 'death or serious bodily injury results from the use of such substance.'" *Burrage v. United States*, 134 S. Ct. 881, 885 (2014) (quoting 21 U.S.C. § 841(a)(1), (b)(1)(A)-(C)).  In *Burrage*, the U.S. Supreme Court considered whether this mandatory minimum provision "applies when use of a covered drug supplied by the defendant contributes to, but is not a but-for cause of, the victim's death or injury." *Id.*  The Court held that, "at least where use of the drug distributed by the defendant is not an independently sufficient cause of the victim's death or serious bodily injury, a defendant cannot be liable under the penalty enhancement provision of 21 U.S.C. 841(b)(1)(C) unless such use is a but-for cause of the death or injury."  *Id.* at 892.

Defendant alleges that "[c]ounsel knew of pertinent case law, and by withholding that knowledge prejudiced [his] right to prepare or have prepared by a competent attorney a proper defense."  (Doc. # 100 at 5).  He also states that defense counsel "had expert witness testimony to refute the government's allegation that the heroin distributed by the defendant and ingested by the victim was the sole cause of the victim's death."  (*Id.* at 7).  According to Defendant, counsel disregarded these legal and factual developments and

8

permitted him to accept the plea offer, even though he knew that the United States might

not be able to establish "but-for" causation at trial.  (*Id.* at 6-8).

Defendant's assertions are again inconsistent with his statements to the Court.  He

complains that his attorney's representation was deficient, and yet he expressed

satisfaction with his attorney's performance during the plea colloquy:

> THE COURT: Okay.  Are you satisfied with Mr. Schneider's representation during this case?
>
> THE DEFENDANT: Not disappointed, Your Honor.
>
> THE COURT: You're not disappointed?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: Has he done everything you've asked him to do?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: He has, okay.  I'm sure you've had some discussions with him that were – and I'm not going to ask you to go into all the details of those, but there is a back and forth between you and your lawyer.  You understand that?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: If you disagree with perhaps something he said, that doesn't make him wrong.  Do you understand that?
>
> THE DEFENDANT: Yes.

(*Id.* at 9).  As the Court previously observed, sworn statements carry a strong presumption

of verity.  *Blackledge*, 431 U.S. at 74.  Defendant's conclusory assertion that his attorney

withheld case law from him and permitted him to enter into an unfavorable plea deal is not

sufficient to overcome this presumption.  *Id.*

Even if counsel did not adequately discuss *Burrage* with Defendant, the record reflects that the Court cured this error during the plea colloquy. Because the U.S. Supreme Court decided *Burrage* a mere four months after Defendant's indictment, the Court repeatedly emphasized the importance of the higher "but-for" causation standard:

> THE COURT: Okay. Now, according to the written plea agreement, you are pleading guilty to the charge distribution of a mixture or substance containing heroin, resulting in death. The elements of this offense – and I had provided copies of a draft set of jury instructions to counsel – are three.
>
> First, that you knowingly or intentionally distributed something you believed to be heroin that, in fact, tested positive to be a mixture or substance containing heroin.
>
> Second, that you knew at the time of the distribution that it was, in fact, a controlled substance.
>
> *And lastly, Mr. Baum's death resulted from the use of that heroin. That is, but for his use of that substance, the victim would not have died.* That's kind of the same – it's worded a little different than the instruction I gave you, but it's in essence the same. Do you understand those three elements?
>
> THE DEFENDANT: Yes, sir.

(*Id.* at 11-12) (emphasis added). The Court also ensured that Defendant had a basic understanding of *Burrage*'s holding and its impact on his case:

> THE COURT: All right. The *Burrage* case. I know that was [a] decision that came down in January of this year which changed the standard of proof that was necessary to a but-for analysis. You've read *Burrage*; have you not?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Have you discussed *Burrage* with your lawyer?
>
> THE DEFENDANT: Here and there. Not in depth as my knowledge entails of it.
>
> THE COURT: You understand the jury instruction I read and the elements of those offenses, that's consistent with your review of *Burrage*; is it not?
>
> THE DEFENDANT: Yes, sir.

10

(*Id.* at 23-24).

Moreover, Defendant was present for the depositions of both his toxicology expert and the United States' toxicology expert.  (Doc. # 60).  With this information in hand, and knowing that *Burrage* imposed a higher burden of proof on the United States, Defendant nevertheless chose to admit to distribution resulting in death:

> THE COURT: All right.  Now, the written plea agreement at paragraph 3 states as follows:  The United States could prove the following facts that establish the essential elements of the offense beyond a reasonable doubt and the defendant admits these facts are true.
> And then there are three – I'm sorry, two subparagraphs, paragraph 3A and 3B.  Have you reviewed those two subparagraphs, 3A and 3B, with your lawyer?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Okay.  Now, 3A states on April 20, 2013, the defendant knowingly and intentionally sold a mixture or substance containing a quantity of heroin, a Schedule I controlled substance, to John Baum in Taylor Mill, Kenton County, Kentucky.  Did you do that?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: John Baum voluntarily consumed the controlled substance, and it caused his death that night.  The use of the mixture or substance containing heroin was an independent cause of death.  Medical evidence shows that John Baum would not have died at the time if not for the use of the substance distributed by the defendant.
> Do you admit that the United States would be able to prove these facts in paragraph 3B beyond a reasonable doubt if this case went to trial?
>
> MR. SCHNEIDER: Before he answers, Judge, he said something to me that requires my –
>
> THE COURT: Very well.
>
> (Mr. Schneider and the defendant conferring.)
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: You did?  You admit that?

11

THE DEFENDANT: Yes, sir.

(Doc. # 72 at 37-38).  In short, Defendant has failed to demonstrate that his attorney was deficient in this regard.  However, even if counsel's performance was deficient, Defendant suffered no prejudice because the Court cured the alleged deficiencies during the plea colloquy.  Defendant's third objection is overruled.

### iv.    The Plea Agreement

"[I]t is the responsibility of defense counsel to inform a defendant of the advantages and disadvantages of a plea agreement and the attendant statutory and constitutional rights that a guilty plea would forgo."  *Libretti v. United States*, 516 U.S. 29, 50-51 (1995); *see also Padilla v. Kentucky*, 559 U.S. 356, 370 (2010) (alluding to this same responsibility).

Defendant claims that he signed the plea agreement "without [ ] even seeing nor [*sic*] reviewing the entire document and worksheets or understanding the appeal waiver and other consequences of the stipulation[s] (that the heroin he distributed to the victim's and ingested by the victim was the sole case resulting in the victim's death) that he conceded[.]" (Doc. # 100 at 6).

Once again, the Court must point out that Defendant's assertions are entirely inconsistent with his sworn statements to the Court.  During the plea colloquy, the Court asked Defendant whether he had reviewed the plea agreement:

> THE COURT: And I asked you this before you were sworn, but I just want to make sure you understand now, after you've been placed under oath, you signed this only after reading it; is that right?
>
> THE DEFENDANT: Not entirely.  But I just read that today, but we had discussion yesterday evening.

12

(Doc. # 72 at 11).   Defendant's subsequent assertion to the contrary, standing alone, is insufficient to overcome the presumption that his sworn statements were true.   *Blackledge*, 431 U.S. at 74.

However, even if Defendant's present assertions are true, the Court cured counsel's deficiencies by discussing the waiver provisions in the plea agreement.   Defendant retained only the right to appeal a sentence in excess of the United States' recommendation and the right to collaterally attack his sentence based on ineffective assistance of counsel.   The Court discussed the former right first:

> THE COURT: Let me get back to the agreement itself.   Did you have any questions about anything in the written agreement that Mr. Schneider could not answer for you?
>
> THE DEFENDANT: The only question was about waiving my rights.
>
> THE COURT: Okay. So there is a handwritten notation here, it looks like paragraph 6 was amended to reflect if the Court imposes a sentence of over 20 years, the defendant can appeal the length of the sentence.   You wrote that in, Mr. Bracke?
>
> MR. BRACKE: I did.
>
> THE COURT: These are your initials, TB?
>
> MR. BRACKE: It is.
>
> THE COURT: Those are your initials, Mr. Brown, Mr. Schneider, right next to that?
>
> MR. SCHNEIDER: That is my signature and my initials.
>
> THE DEFENDANT: Mine as well.
>
> THE COURT: That's the only change in the written plea agreement; is that right?
>
> MR. BRACKE: Yes, sir.

MR. SCHNEIDER: Yes, sir.

. . .

THE COURT: Okay.  Now, in determining whether or not to follow the recommendation of the prosecutor, let's say the Court does not follow the recommendation. Of course, you wouldn't be happy because you didn't get the 240, which was recommended.  However, you could appeal that determination to the Sixth Circuit Court of Appeals over in Cincinnati.  Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: But you're not going to be able to withdraw your guilty plea, come in and say, Judge, I want to change my mind now.  I want to go to trial. I don't want to plead anymore.  Just because I don't follow the recommendation, that doesn't give you the right to withdraw your plea of guilty.  Do you understand that?

THE DEFENDANT: Yes, sir.

(*Id.* at 10-11 and 23-24).

The Court then discussed Defendant's right to collaterally attack his sentence based

on ineffective assistance of counsel:

MR. BRACKE: Judge, I know you reviewed the appellate waiver in some detail.  The agreement also contains a waiver of collateral attack, except for claims of ineffective assistance of counsel.

THE COURT: Okay, I'm almost to that.  I appreciate that.

. . .

THE COURT: Now, Mr. Bracke mentioned paragraph 6 of your plea agreement also contains a collateral attack waiver.  Let me read paragraph 6 because it's very short.  I've already read the handwritten addition.  It states the defendant waives the right to appeal the guilty plea, conviction and sentence unless the Court sentences you above 240.  And then it further states, except for claims of ineffective assistance of counsel, the defendant also waives the right to attack collaterally the guilty plea, conviction and sentence.

Now, have you spoken with Mr. Schneider about those waivers?

THE DEFENDANT: The first one.  Not the second one, Your Honor.

14

THE COURT: Let me explain what the second one is, because you've been an active participant in this case from the beginning.

. . .

THE COURT: So this waiver of your right to file a post-conviction motion, it does have teeth. The Circuit over at the Court of Appeals has said you can waive – in fact, you waive your right to confront your witnesses in this case, and we had a hearing last week on taking the depositions of your experts and the one expert, Dr. Ward, by the prosecutor. I went through a number of questions with you to make sure you understand that you have a right to actually confront the witnesses, and you waived that.

What you're not going to be able to do – let's say you're at the facility here in Kentucky, one of the federal facilities in Kentucky serving your sentence, and you decide to file a motion complaining about, you know what, they shouldn't have forced me to waive my confrontation rights. The record will reflect that I don't think we forced you to do anything. In fact, hopefully the record reflects that all of this has been something that you've decided to do on your own, because that's really what this is about.

You've got to make your own choices. We tell you what the options are, and you decide. Hopefully, you've done that here.

But the waiver, "except for claims of ineffective assistance of counsel." Now, everything that your prior lawyer did, we remedied by continuing the trial, giving you a second lawyer, and you had two experts. There was an investigator, Mr. Dixon, I think, who I expect ultimately to get a bill from as well.

So all of those things have been put in place for you. You're not going to be able to come back later and challenge anything about your case with the sole exception that you think maybe Mr. Schneider didn't do a very good job from a constitutional perspective.

That's the only claim that you're able to raise in what's called a 2255 motion. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Okay. Just because this preserves your right to file such a claim, that doesn't mean that that claim's going to have any merit, because we've gone into a lot of detail about this plea process today. Hopefully you've been – I asked you earlier if you were satisfied with your lawyer. You said you were. You also said he's done everything you've asked him to do. Is that accurate?

THE DEFENDANT: Yes, sir.

THE COURT: All right. So you understand that waiver now, after going through it with you, paragraph 6?

THE DEFENDANT: Yes, sir.

(*Id.* at 28, 32-34).

The Court also discussed the short-term consequences of a guilty plea, taking care to lay out all of Defendant's options so that he could make an informed decision:

> THE COURT: Now, we picked a jury last Friday. I told them that what the charge was. Your attorney was present during the selection of the jury. I told them what the burden of proof was. I told them you would be presumed innocent. During the preliminary instructions, I went over what the evidence – what the evidence is and what the evidence is not.
> You understand that Mr. Schneider's going to be present if you decide to go to trial instead of – you can decide right now, you know what? I want to change my mind. I want a trial, and we'll start the trial. We'll bring the jury in.
> As far as the trial goes itself, I mean, you've got a right to testify. You have a right not to testify. You have a right to have witnesses called on your behalf. In fact, Mr. Schneider identified those witnesses in front of the jury last week, last Friday.
> All of those things would go into the trial. Do you understand that?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: If you chose not to testify or, frankly, even though you have experts, you wouldn't necessarily need to call them. But if you decided not to testify, I would tell the jurors that they could not consider your silence in any way in determining whether or not you were guilty, because that's not appropriate. I told the jury that a couple of times last week. Do you understand that?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: All right. If I accept your guilty plea this morning, there's going to be no trial. I'm going to release the jurors after accepting your plea, and then you'll be sentenced in approximately 90 days after that presentence report is prepared. Do you understand that?
>
> THE DEFENDANT: Yes, sir.

(*Id.* at 35-36).

16

The Court went into even more painstaking detail as to the possible sentences Defendant would face with either course of action. The passage is lengthy, but the Court will quote the record in full here due to the importance of the concepts discussed:

> THE COURT: All right. Now, according to this plea agreement, the United States is recommending a sentence of 20 years. There will be no recommended fine. There's no agreement regarding the length of the supervised release. And ultimately, the decision is up to the Court. Do you understand that?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: If you plead guilty, you're facing a minimum term of 20 years. There's a maximum term, by statute, of life in prison. Do you understand that?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: There's a maximum fine of a million dollars and a term of supervised release of at least three years. Do you understand that?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: There's also a $100 special assessment. Do you understand that?
>
> THE DEFENDANT: Yes, sir.
>
> . . .
>
> THE COURT: Because you've chosen this plea option, the potential sentencing is important. In fact, Rule 11 of the Federal Rules of Criminal Procedure require that I go over what the potential penalties are from a statutory perspective and a guideline perspective. So if you are a Category VI criminal history, which would mean you were a career offender, and a level 32, the advisory guidelines would be 210 to 240, because 240 would be the cap if you weren't convicted of that death enhancement. Do you understand that?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Now, if you did have the death enhancement, the jury were to find that Mr. Baum died – but for his ingestion of the heroin that you distributed to him on April 20, 2013, he would not have died, and they would

17

check that yes, the jury – or you pled guilty to that, which you're doing here. But let's say you go to trial and you don't get acceptance of responsibility and you're enhanced for the death enhancement.  It looks like under 2D1.1(a)(2), base offense level 38 if the defendant is convicted under 841(b)(1)(A) or (b)(1)(B) or (b)(1)() and the offense of conviction establishes that death resulted from the use of the substance.  That would kick in if you went to trial. You'd be an offense level 38, and he would still be a career offender.  So he would be a Category VI.  A 38, Category VI is 360 to life; is that right?  Yes, 30 years.  Do you understand that?

THE DEFENDANT: I understand.

THE COURT: Okay.  Now, if you plead guilty, you're looking at a guideline range of 324 to 405.

THE DEFENDANT: Right now?

THE COURT: That's the guideline range you're looking at, potentially.  Now, there's a recommendation of 20 years by the prosecutor.  If I go with the prosecutor's recommendation in this case and sentence you to 20 years, you're giving up your appellate rights.  We've already talked about that.

THE DEFENDANT: Yes, sir.

THE COURT: Now, I'm trying to tell you what the potential guidelines are on a plea.  If you plead to the death enhancement, that total offense level of 38 is reduced by two because you're pleading guilty.  That gets us down to a 36 under the guidelines.  Do you understand  how that works?

THE DEFENDANT: Yes, sir.

THE COURT: Now, if you're a 36, Category VI, which you will be because – well, if you're deemed to be a career offender, you will be.  Mr. Bracke seems fairly confident, as does the probation officer, that you will.  I haven't looked into that in any great detail.

If you're a career offender and you plead guilty, your advisory guideline range would likely be 324 to 405 months.  Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Okay.  Now, the recommendation is 240, which is approximately eight years less than that.

THE DEFENDANT: Yes, sir.

18

THE COURT: Do you understand that?

THE DEFENDANT: Yes, sir.

. . .

THE COURT: All right.  It's part of my job, Mr. Tingle-Brown, to make sure that you understand what the potential penalties are.  I've tried to give you the estimates based upon if you are found guilty of just the distribution without the death enhancement, if you are found guilty of the death enhancement at trial, or if you plead guilty to the death enhancement.

Those are the three – given your attorney's statement to the jury in *voir dire* on Friday, I don't think it's really something that the jury is going to be able to say "no" on that did he distribute, because he's pretty much acknowledged that to the jury already.

So the distribution, without the death enhancement, lands you somewhere in the range of 210 to 240, and we talked about that earlier.  Do you understand that?

THE DEFENDANT: (Nodding affirmatively).

THE COURT: You do?

THE DEFENDANT: Yes, sir.

THE COURT: So it looks like, if I follow the recommendation of the prosecutor in this case, you're going to be looking at a potential savings of nine years under the – from the guideline down to the statutory minimum.

THE DEFENDANT: Yes, sir.

THE COURT: And you're okay with that?

THE DEFENDANT: Yes, sir.

(*Id.* at 12-13, 15-17 and 19-20).

Put simply, the record reflects that the Court not only took great care to discuss the consequences of a plea and the concept of waiver with Defendant, but also repeatedly asked Defendant whether he understood these issues.  Defendant answered in the affirmative every time.  Defendant has once again failed to establish that his counsel's representation was deficient.  However, even if counsel was deficient, Defendant suffered

no prejudice because the Court cured the alleged deficiencies during the plea colloquy. For these reasons, Defendant's fourth objection is overruled.

### B.    Remaining Arguments

The Sixth Circuit "has held that plea agreement waivers of § 2255 rights are generally enforceable[.]" *Davila v. United States*, 258 F.3d 448, 450-51 (6th Cir. 2001); *see also In re Acosta*, 480 F.3d 421, 422 (6th Cir. 2007) (stating that the waiver must be "informed and voluntary" in order to be enforceable).

Defendant seeks a downward departure pursuant to U.S. Sentencing Guideline § 5K2.12.  (Doc. # 100 at 5).  This argument fails for two reasons.  First, Defendant waived his right to request such relief.  Second, § 5K2.12 permits the Court to depart downward if a defendant "*committed an offense* because of serious coercion, blackmail or duress." It may not be used to reduce a defendant's sentence because he claims that he was coerced into pleading.

Accordingly, for the reasons stated herein,

**IT IS ORDERED** as follows:

(1)    The Report and Recommendation ("R&R") (Doc. # 97) of United States Magistrate Judge J. Gregory Wehrman is hereby **ADOPTED** as the findings of fact and conclusions of law of the Court;

(2)    Defendant Timothy Tingle-Brown's Objections (Doc. # 100) to the R&R are hereby **OVERRULED**;

(3)    Defendant Timothy Tingle-Brown's Motion to Vacate Under 28 U.S.C. § 2255 (Doc. # 92) is hereby **DENIED IN FULL**; and

20

(4)     For the reasons set forth herein and in Judge Wehrman's R&R, the Court determines that there would be no arguable merit for an appeal in this matter and no certificate of appealability shall issue.

This 31st day of March, 2016.



Signed By:

*David L. Bunning*

United States District Judge

G:\DATA\ORDERS\Covington Criminal\2013\13-54 Order Adopting R&R on 2255.wpd